If it pleases the Court, my name is Michael Bigelow, and I represent Carl Lewis. I'd like to reserve a couple of minutes, if I may. Of course. Keep your eye on the clock. Yes, Your Honor. Thank you. I will. It is my submission that it is too often held that demeanor equals credibility. And it seems to me the Supreme Court findings, holdings, pronouncements, notwithstanding that it's a fool's errand to rely on the demeanor of a skilled actor, particularly one whose art is to direct and focus attention to lead an audience toward a conclusion. And after all that, it really is what a lawyer does. A lawyer conjures tears when desirable, outrage when helpful, and misdirection when necessary. He wears sincere suits for closing, and he wears power ties for opening and for voir dire. I submit that it is much better, and we can do that, in this case, to focus on the ordinary characteristics or techniques of credibility evaluation. We look to consistency, inconsistency, inadequately explained reasons for striking the two black women and for not striking those who are similarly or identically situated. May I just follow up on your opening? Is it your position, then, that the Court erred in determining that the prosecutor's testimony was credible? I'm going to ask the Court to repeat the last sentence. Is it the predicate? Is it your view that the Court erred in determining the prosecutor to be credible? The Court paid too much attention to credibility. The Court equated sincerity, and says so in its findings and recommendations, to credibility. Aren't they the same thing in this case? I'm sorry? Aren't they the same thing in this case? No. No, Your Honor, they're not. There are an awful lot of sincere people in this world whose sincerity is not credible. But here we're trying to determine what was going on in the prosecutor's head in striking the jurors. So it's – if he's sincere, he had direct evidence and he had circumstantial evidence that the prosecutor was not credible. I said it out in my brief. And might have found that, but didn't. So the question is not whether there was evidence there that would have supported a finding of that the prosecutor manipulated or did this for racial animus. The question is, is there enough evidence to support the finding that the Court humane? There's enough evidence to support, and I recognize that it's my burden to prove that he discriminated, and there is more than enough evidence. It's actually a little bit heavier than that. That was a burden on the district court to show that the prosecutor discriminated. At this point, you have one additional hurdle to jump, and that is you have to show that the district court, having found against you, the district court was clearly wrong, clearly erred, no? And I submit to the Court that I have met my burden in this Court, but I met my burden in that Court as well, and the Court erred in finding that I had not met my burden. So what would you point to that would permit us to tip the credibility finding? You can't skip it, Your Honor. I said what would you – what would tip it in your view? What can you point to that we look at and say, you know what, you're absolutely right, he clearly erred. He clearly erred, number one, again, in making the determination that the prosecutor was sincere, but he clearly erred in finding that he paid absolutely no attention at all, none whatsoever, to the prosecutor's statement that this woman was a wreck and unfit to serve simply because she had cousins who had been, you know, in the jail, which is her words. He paid no attention to that, Your Honor. He didn't mention it. He quotes the language, but that did not factor into his reasoning. Not one iota did that factor in his reasoning. Now, I apologize to this Court and to everyone else, but to me, that is blatantly racist. He did not say that of any of the white women. He did not say it of any of the white men who were similarly situated. He said it only of this one woman who happens to be black. His – he, meaning the magistrates, finding, or the district courts, finding that juror number one looked – I equated him to my father. And therefore, he's acceptable, whereas another black woman is not acceptable, although identically situated. If we accept that, if that is not error, it means that we accept that kind of rationale. That means that for a male prosecutor, where there is a male prosecutor, no black woman will ever be able to sit. That black woman will never – One did sit, didn't they? I'm sorry? One did sit. Jury 11 sat. If the – yes, that's true. But if the – if the prosecutor – So we did have one sit, correct? That's correct, Your Honor. I want to maybe step back just a little bit. It seems to me that you're going after the district court here because you're buying into the idea that the magistrate court made the correct decision in determining that the standard used by the California court was wrong because the – in reality, step one of our analysis would be that we would be required to defer to the California Court of Appeals factual finding that there was no prima facie case of bias, wouldn't we, unless we find they relied on illegal precedent? You're talking about Respondent's first argument with respect to a prima facie case. The problem, Your Honor, is that – Well, what I'm talking about is I want you to suggest or I want you to consider the situation. The only reason we're really talking about whether the district court clearly erred or not is because we passed up a fundamental part of this argument you must make, which is that normally I would defer to the Court of Appeals, in other words, the California Court of Appeals, their factual finding that there was no prima facie case of bias at all. And the only reason the magistrate court said it wasn't is because they said they applied the wrong law. Correct. But the problem I have with that is that the magistrate court relied on two opinions that weren't even issued when the court made its determination. People v. Johnson, 71 P. 3rds. 270, and Johnson v. California, 545 U.S. 168, were not even issued at that time. And yet the magistrate court seemed to suggest that because they were considering – the magistrate court was considering these cases – that the state court opinion was wrong. How could the state court have considered an opinion that wasn't even issued? That obviously was not briefed by me. It was briefed – it was briefed by Respondent, but I would point out that Respondent failed to object. Respondent, that point was made by the magistrate judge on at least two separate occasions and maybe three. Respondent did not object, nor did Respondent file a cross-appeal. Respondent raised that issue only in Respondent's – in Appellee's brief. Now, so – and – and they waived it, Your Honor. They waived it. How did they waive it? When they brought it up, when they were here. I mean, they didn't bring this appeal. When were they supposed to bring it? They could have filed – they have the right to file objections to findings and recommendations. The magistrate judge or the district court judge says in its holding, in its FNRs, that parties file objections. That was a finding made by the magistrate judge. It was affirmed by the district court judge, and Respondent did not file objections. Well, there was no reason for them really to file objections if, in fact, the decision made in the district court was where they wanted to come out anyway. The worry that I have is that we have avoided, by talking about what the district court did here, we've avoided the California court's fine analysis, not knowing what likelihood reasonable inference. We also rely in the magistrate court on Ninth Circuit decisions that hadn't even been made in determining about the comparative analysis. So this magistrate, who now has all these extra cases that he's now read, is now judging the California Court of Appeal on that. Now, otherwise, I would accept his decision on face. Now, how could I do that? I'm just because nobody raised it, is that your best argument? It's the only argument I can make at this point. If the Court wishes to remand the matter back for further briefing, that would be fine. But it seems to me the Respondent has an obligation, if they want to raise that issue, if they're unhappy with that decision by the magistrate judge, by the district court judge, then they need to raise that issue. I don't need to raise it. That's your best case for that, because I look for a case like that. I mean, I look for a case where now the Respondent must appeal itself on something that they find was wrong when they made it, when they got the right. They got what they wanted in the district court. There was no reason to appeal. I got the right answer. I got the answer I wanted out of the district court and out of the magistrate court with respect to that particular holding. That's the answer I wanted. I'm not going to appeal that. Well, you're not going to appeal it, but neither are they, because the ultimate answer was the one they wanted. But if I look at the decision of the district court, the magistrate court, I find they couldn't have made that decision.  We reviewed de novo. I'm sorry, Your Honor? We're reviewing de novo anyway, so we take a look and see whether, first, the California decision was that, you know, contrary to Supreme Court law. I mean, we make that determination de novo, don't we? So we may or may not get to the determinations made by the district court. But we're not reviewing – since that issue – and if I could just go back to the district court, I can have just a second and I'll give you the court to cite. Well, we could uphold on any ground, and we also reviewed de novo, so kind of a pig in a poke. We can look at either one, correct? Failure to file the objections within specified time may waive right to appeal in district court's order. Turner v. Duncan, 158, Fed. 3rd, that is at excerpts of Record 43, my excerpts of Record. I am way over time. I'm way over time, and I appreciate the Court's patience. Thank you. Good morning. May it please the Court. My name is Laura Simpton, and I represent Respondent, the Warden. This morning, this Court has addressed the appropriate standard of review on whether the ADPA would apply to the prima facie showing that was found to be lacking by the trial court. In a footnote on page 19 and footnote 4, Respondent did note that I am assuming for purposes of this appeal that this will be reviewed de novo in light of this of the law that was in effect before, at the time that, basically before People v. Box, it was, there was an unsettled law as to whether or not the prima facie showing needed to be by a mere inference, which is taken from Batson, or whether it would be something more, a strong likelihood or a strong showing. There was some conflicts in the appellate courts at the time that the trial court held, made its ruling. The trial court did not specify exactly what particular rationale it was relying on, and the appellate court relied on Box, which equated a strong likelihood with a reasonable showing. Now, since then, as this Court has pointed out, after the State appellate court reached that decision, the U.S. Supreme Court definitively clarified that a strong likelihood is not the standard for a prima facie showing. It need only be a mere inference, and that was taken from Batson. Although our office has certainly argued and argued in the previous cases that are cited in my brief that we believe that the AEDPA deference may still be maintained because of Teague and new rules, those arguments had previously been rejected by this Court, and for that reason, I have assumed for purposes of this appeal that the de novo review would apply. And under the de novo review that was applied by the district court, the factual findings and the factual credibility determinations that were made by the district court judge are now going to be reviewed by this Court, not under the AEDPA, but with the great deference that is required on appeal. And as the U.S. Supreme Court noted in Felchner and also in Snyder, that when you have a court who is observing firsthand the prosecutor and his demeanor, that that's the best evidence of his intent, and that that is a factual finding entitled to be reviewed with great deference, that should only be reversed for clear error, meaning that it is illogical, implausible, or without support on the record. Here, the prosecutor testified in person before the magistrate judge, and his findings were adopted in whole by the district court judge. The prosecutor testified for over an hour. He answered all of the questions in a forthright, sincere manner. The district court judge in his – the magistrate judge in his FNRs repeatedly notes throughout his thorough analysis that the prosecutor was genuine, appeared sincere, and that his explanations were reasonable and supported by the record and were not contradicted or undermined by any sort of comparative analysis, which the magistrate judge did engage in. Sotomayor, during his argument, seemed to point to another juror who was similar in what he claims is every respect, except for skin color. And I was wondering if you could address that argument. Is that a fair representation of the record? I think we're referring to juror number one, who was a chaplain and who had served on two prior juries, one of which resulted in a hung jury. And the comparison was to the excluded African-American juror, Veronica Mosley, who had sat on one prior jury that hung, and she was employed in the – the prosecutor described it as a social work-esque type of employment or state agency that gave disability services to adults. The prosecutor explained he excused Veronica Mosley because of the combination of those two factors and that it was a rule of thumb and a generalization that he would view with caution those in the helping professions and those who had served on a prior jury that had hung. But he had a special connection. Chaplain is not social work-esque? He said that he absolutely viewed him to be a chaplain, that a chaplain was a social worker, but that his own father and his brother were both chaplains. And so we had a special connection with chaplains, and he felt that because a chaplain is used to sort of the drama and sifting through conflicting versions of events, perhaps, that a chaplain would be uniquely best suited for this particular – for being a juror. And he also added that this juror just frankly reminded him of his father and that he felt that his father would be the ultimate juror, and so for that reason he was comfortable for him. And the magistrate judge specifically found in the findings and rule – findings and recommendations that he did believe the prosecutor when he gave the statement that this was not a pretext. Isn't that kind of problematic, too, though, because obviously his father is not African American, so it's like I'm more comfortable with people like me. The father had a hung jury – I mean, the minister had a hung jury, did have one verdict, I guess, that they reached in a civil case. But other than that, he basically is a hung jury person in a socialistic world compared to Veronica M., who's a hung jury lady in a socialistic job, but she's African American. So I guess it's a difficult thing always to sort through these like an archaeologist in effect. Right. But is that all he has to say as I just – I've shown more confidence in this juror because he seemed like my dad? Well, I think that that's – more credit should be given to the magistrate judge who sat there and observed and watched this prosecutor. It's not enough for a prosecutor to come in and say, I didn't have a discriminatory intent. This prosecutor was sworn under oath. He testified for over an hour. He was subjected to an extensive cross-examination. And the magistrate judge viewed, observed, and listened to him and noted his demeanor. And so I – great deference must be given to that judgment call that was made by the magistrate judge in reviewing the prosecutor and his explanations. And the district court did make that factual finding. And there is – Would you clarify about the juror, an African American woman who did sit on the jury and she didn't seem to be subject to any of these challenges. And yet, in most of the discussion back and forth, she's kind of ignored, and it's almost by happenstance we seem to find in the record or in some pressing reference like in the district court everybody was sort of surprised, like, oh, look, here's this lady on the jury. Right. Can you just put some context on that? Well, I actually handled this case from the direct appeal. And so I was aware on the direct appeal that the record just didn't – the parties didn't state on the record the racial compilation of the jury. And they had their jury, and they moved forward. And, of course, the voir dire was extremely short. It was extremely brief, and it was conducted solely by the trial court judge. So the appellate record simply didn't state this – didn't state the juror's race or ethnicity. And so it wasn't until we got into the evidentiary hearing component where we could present new evidence that we were able to finally demonstrate that there was, in fact, an African-American juror who did remain on the panel throughout. I see my time is close to expiring. Is there any other questions? We're fine. Thank you. Thank you very much. You're out of time. Would you like to take a minute for rebuttal? Your Honor, thank you. You gave me two additional minutes, and I appreciate that. Okay. Thank you very much. The case is now in stand-submitted.
judges: Kozinski, McKeown, Smith